UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:05-CV--97 |
| v. | ) ) | |
| GAMMANS ARCHIUTECTURAL d/b/a SKYLIGHTS INTERNATIONAL, INC. and GAMMANS ARCHITECTURAL PRODCUTS, INC. | ) ) ) ) ) | |
| Defendant, | ) ) | |
| ================================= | ) | |

## PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION TO AMEND JUDGMENT AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF

NOW, comes Plaintiff Equal Employment Opportunity Commission, an agency of the United States of America, and hereby moves pursuant to 28 U.S.C. §§ 3012 and 3013 to add Nelson Gammans and Debra Gammans as defendants to the judgment entered by this Court in the above-captioned suit.  Under § 3012, of the Federal Debt Collection Procedure Act, Plaintiff may join as a defendant any party Plaintiff reasonably believes liable to Defendant for the judgment debt. Under § 3013 of the Federal Debt Collection Procedure Act, this Court has the discretion to modify and extend the use of any enforcement procedure under the

Federal Debt Collection Procedure Act (28 U.S.C.S § 3001, et seq.), including the

power to add parties on a motion of a party or by its *own* initiative.  See  FTC v.

Nat'l Bus. Consultants, Inc., 376 F.3d 317 (5th Cir. 2004).

    As good cause for this motion, the Plaintiff shows the Court the following.

1.    On September 30, 2005, Plaintiff United States Equal Employment

Opportunity Commission filed the above-captioned action under Title VII of the

Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991

("Title VII") to correct unlawful employment practices on the basis of race, and to

provide appropriate relief to Mr. James Hall and Mr. Gary Richardson, who were

adversely affected by such practices.  (See Docket No. 1, Complaint).  From the

commencement of the suit through the entrance of the final judgment, Plaintiff

Equal Employment Opportunity Commission remained the sole plaintiff; neither

Mr. Hall nor Mr. Richardson ever intervened in the suit on their own behalf.  (See

Docket, Generally).

2.    On October 26, 2006, this Court entered a monetary judgment, in the United

States District Court for the Northern District of Georgia, in favor of the Equal

Employment Opportunity Commission against corporate Defendants Gammans

Architectural, d/b/a Skylights International, Inc. and Gammans Architectural

Products Inc.( hereinafter "Corporate Defendants").  The Court imposed monetary

amounts for violations of Title VII of the Civil Rights Act of 1964 as amended.

This court's monetary judgment against the Defendants awarded damages to the EEOC on behalf of Gary Richardson in the amount of $77, 484.18 and James Hall in the amount of $85, 124.15. The amount totaling $162,608.33, due the EEOC on behalf of Gary Richardson and James Hall, remains unpaid and outstanding. (See Docket Nos. 20 21, Court's Order and Default Judgment).  As of the time of the filing of the instant motion the EEOC is due a total of $195,735.39 on behalf of Mr. Richardson and Mr. Hall.  Richardson is now due $93,269.49, and Mr. Hall is due $102,465.90.

3.      Plaintiff Equal Employment Opportunity Commission is an agency of the United States government with litigation authority.  See 28 U.S.C. § 3001(a).  In the instant matter, Plaintiff Equal Employment Opportunity Commission seeks to enforce the judgment rendered by this Court on its behalf.  Therefore, the Federal Debt Collection Procedure Act, 28, U.S.C. § 3001, et seq., provides the exclusive procedure for Plaintiff to recover on the judgment debt.  28 U.S.C. § 3002(1)(A). Moreover, the Federal Debt Collection Procedure Act preempts state law.  See Mahler v. United States, DOJ, 2001 U.S. Dist. LEXIS 19266, 3-4 (S.D. Fla. 2001).

4.      Previously, third-party beneficiaries to Plaintiff's judgment, James Hall and Gary Richardson, attempted to recover on the instant judgment debt through collection actions in the state courts of Georgia.

5.    Nelson Gammans officially owned Gammans Architectural Products (GAP) until 1991 when he allegedly sold it to Cheshire Investments, Limited. (Docket No. 61, Gammans Depo. 12:22 - 16:7). However, Nelson Gammans has no proof that he ever actually sold the business. (*Id.* at 152:7-153:25).

6.    Even though Nelson Gammans supposedly was only a customer of GAP's and had no involvement with the company after selling it in 1991 until he rejoined the company as president in 1996, Gammans acted as a personal guarantor for the company in or around 1994. (*Id.* at 146:1-148:9.) Gammans did not even ask the company's alleged owners to assume the risk in his stead. (*Id.*)

7.    Nelson Gammans rejoined Gammans Architectural Products in 1996 as the company's president. (*Id.* at 18:3-23.) As president of Gammans Architectural Products, Nelson Gammans exercised unlimited authority over the company without any oversight or input from Cheshire Investments. (*Id.* at 41:2 – 42:1.) His power over the corporation included the power to file bankruptcy or to liquidate the company's assets. (*Id.* at 46:13 -48:10.)

8.    Nelson Gammons was operating Gammans Architectural Products when the Internal Revenue Service held Nelson Gammans personally liable for the taxes the corporation owed. Nelson Gammans ultimately settled with the IRS for approximately $30,000. (Id. at 41:2 – 46:12.)

9.     From late 2005 until mid-2006 Nelson Gammans was winding down GAP.

(*Id.* at 85:4-14.)   Indeed, two months after Plaintiff filed suit, Nelson Gammans

tried to negotiate the sell of GAP's assets.  (*Id.* at 177:22-178:15.) Nelson

Gammans' services were the only asset of the company with any real value at that

time. (*Id.* at 178:13-15.)

10.    Nelson Gammons represented to Plaintiff that the IRS shut GAP down

because of back taxes. (*Id.* at 46:1-8.)  However, Nelson Gammans told his contact

with GAP's alleged owners that the company shut down because it could not

afford to defend against Plaintiff's lawsuit. (*Id.* at 190:7-15).

11.    As GAP was shutting down, Gammans drafted a letter telling GAP's

employees that they were eligible for employment with Sol-Area, and Sol-Area

hired many of those employees.  (*Id.* at 108:5-109:20).  Nelson Gammans is the

president and 100 percent stockholder of Sol-Area.  (*Id.* at 7:15-17.)

12.    Defendant Skylights International was a corporation owned by Debra

Gammans.  (*Id.* at 21:7-18.)  Skylights International is no longer in business.

Skylights International fabricated products for Gammans Architectural Products as

one of its suppliers.  (*Id.* at 21:7 – 22:10.)

13.    Nelson Gammans and Debra Gammans negotiated the terms of the contracts

between Skylights International and Gammans Architectural Products.  (Id. at

29:25-31:13.)  They confirmed their negotiations on Post-it notes.  (*Id.* at 31:16-32:7.)

14.    Skylights International and Gammans Architectural Products were both tenants on the property of Beaver's Street, LLC, which is owned by Nelson and Debra Gammans.   (*Id.* at 8:23-12:21; 21: 7-18.)

15.    Skylights International is no longer in business.  (*Id.* at 24:16-25:12.)  Ms. Gammans closed the business in response to the EEOC's investigation of the charge of discrimination which gave rise to the above-captioned suit.  (*Id.* at 25:3-10.)

16.    As Skylights International was closing down, Debra Gammans gave a letter to the employees telling them that they were eligible for employment with Nelson Gammans' Sol-Area entity.  (*Id.* at 119:15-121:2.)  Sol-Area hired Skylight International employees.  (*Id.* at 110:3-5.)

17.    Sol-Area was a Nelson Gammans' company that had been dormant for a number of years but became active again take over the essential functions of Skylight International.  (*Id.* at 57:12-60:10; 77:5-13.)  Sol-Area also conducts many of the business functions that GAP performed.  (*Id.* at 90:18-22.)

17.    While the Federal Debt Collection Procedure Act governs the instant action and preempts state law, it is instructive to note the aforementioned facts would, under Georgia law, allow a private creditor to pierce the corporate veil of Skylights

International and Gammans Architectural Products to hold Nelson and Debra Gammans personal liable for the corporations' debts.

18.     Under Georgia law a private plaintiff may hold a corporation's owners liable for the corporation's debts by showing "that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud." Derbyshire v. United Builders Supplies, Inc., 194 Ga. App. 840, 844 (1990) (internal citation omitted); See also Anthony v. Gator Cochran Const., Inc., 299 Ga. App. 126 (2009) (piercing the corporate veil is permitted to remedy injustices which arise when a party extends his privilege in the use of the corporate entity in order to defeat justice).

19.     In the instant case, Plaintiff need not meet the bar set by Georgia law because Plaintiff is an agency of the United States government and may only seek enforcement of the judgment rendered in its favor through the mechanisms outlined in the Federal Debt Collection Procedures Act, an Act which preempts state law.   See 28 USC § 3001(a) and (d).  However, the fact that Georgia law would permit a private plaintiff to hold Nelson and Debra Gammans liable for the

debts of their corporations serves to demonstrate the "reasonableness" of Plaintiff's motion under 28 USC § 3012 to add Nelson and Debra Gammans as defendants.

20.    Furthermore, the actions described in ¶¶ 10-11 and 15-17, indicate that Nelson and Debra Gammans engaged in fraudulent transfers in violation of 28 USC § 3301, et seq., Fraudulent Transfers Involving Debts.

21.    Accordingly, Plaintiff asks this Court to enjoin Nelson and Debra Gammans from transferring or disgorging any assets that may used to satisfy this judgment while the instant motion is pending.  Should the Court rule in Plaintiff's favor, Plaintiff will file with the Court applications for any and all appropriate writs and orders.

22.    In conclusion, Plaintiff Equal Employment Opportunity Commission moves this Court, pursuant to 28 USC §§ 3012 and 3013, to join Nelson and Debra Gammans as defendants in the above captioned action.  Plaintiff requests that this Court enjoin Nelson and Debra Gammans from moving, disgorging or otherwise transferring any assets that may used to satisfy the judgment at issue until the ultimate resolution of this matter.


Respectfully submitted,

DARIN B. TUGGLE
Trial Attorney
New Jersey Bar No. 048621998

U. S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
ATLANTA DISTRICT OFFICE
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:   (404) 562-6817
Facsimile:   (404) 562-6905
Email:        darin.tuggle@eeoc.gov